IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FARZAD AZAD, KATHRYN M. AZAD, PATRICIA HELEN LEILANI FRANCO, ROBERT A. KOVACH, and NINA TANNER-SMITH, individually and as Trustee of the Nina-Tanner-Smith Revocable Trust dated May 18, 2001,<br><br>Plaintiffs,<br><br>v.<br><br>PNC BANK, N.A., a National Banking Association; CHARLES ZOLTAN FEDAK; MERI LYNN FEDAK; JESSECA F. KAUFMAN; CARI TODD KEENAN; BANK OF HAWAII; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; FLAGSTAR BANK, FSB.; BENJAMIN KANE; FIRST HAWAIIAN BANK; JOHN M. TROBOUGH; LAURIE A. TROBOUGH; and DOE DEFENDANTS 1-50,<br><br>Defendants. | Civil No. 19-00035 JAO-KJM<br><br>FINDINGS AND RECOMMENDATION TO GRANT MOTION FOR ORDER OF REMAND |

FINDINGS AND RECOMMENDATION TO
GRANT MOTION FOR ORDER OF REMAND

The plaintiffs in this action are citizens of Hawaii, Texas, and California.

Plaintiffs Farzad Azad, Kathryn M. Azad, and Patricia Helen Leilani Franco are

Hawaii citizens, plaintiff Robert A. Kovach is a Texas citizen, and plaintiff Nina Tanner-Smith is a California citizen (collectively, "Plaintiffs"). Plaintiffs' Motion for Order of Remand ("Motion for Remand") arises from the January 22, 2019 Notice of Removal ("Removal") filed by defendant PNC Bank, N.A. ("PNC"), which PNC removed to this district court on the basis of diversity pursuant to 28 U.S.C. §§ 1332(a) and 1441. PNC's Removal alleges that Plaintiffs fraudulently joined: (1) Hawaii citizen defendants Jesseca F. Kaufman, Cari Todd Keenan, John M. Trobough, and Laurie A. Trobough; (2) Hawaii based banks, Bank of Hawaii and First Hawaiian Bank (together with Hawaii citizen defendants, "Hawaii Citizens"); (3) California citizens Benjamin Kane, Charles Zoltan Fedak, and Meri Lynn Fedak ("California Citizens"); (4) Mortgage Electronic Registration Systems, Inc., a Delaware corporation ("MERS"); and (5) Flagstar Bank, FSB, a Michigan federally chartered savings bank ("Flagstar"). PNC argues that the inclusion of the Hawaii Citizens and California Citizens as defendants ("Non-Diverse Citizens") destroys federal diversity jurisdiction because the Azads are Hawaii citizens and Tanner-Smith is a California citizen.

PNC asserts that only PNC is a proper defendant for the purposes of determining this district court's diversity jurisdiction because the inclusion of the Hawaii Citizens, California Citizens, MERS, and Flagstar constitutes fraudulent joinder. PNC thus contends that, because PNC is a Delaware citizen and none of

2

the plaintiffs are Delaware citizens, this district court maintains diversity

jurisdiction in this action.  The Court disagrees.

For the reasons discussed in this order, the Court FINDS and

RECOMMENDS that the district court remand to the State of Hawaii Circuit Court

of the Second Circuit ("State Court").

## BACKGROUND

Plaintiffs in this case share a similar background.  Each plaintiff owned a

property on the island of Maui.  Between 2004 and 2009, each plaintiff executed

an unrecorded promissory note and mortgaged their home as security for the note.

PNC, as assignee and/or mortgagee of each of Plaintiffs' mortgages, is the entity

that ultimately commenced nonjudicial foreclosure proceedings against all

Plaintiffs (through its agent, the law firm of Routh Crabtree Olson) pursuant to the

power of sale contained in each of Plaintiffs' mortgages ("Power of Sale

Provision") and pursuant to HRS chapter 667.  ECF No. 1-2 at ¶¶ 41-42.

(1)  The Azads owned a property in Lahaina, Maui ("Azad Property").  ECF

No. 1-2 at 8 ¶ 31.  In 2006, the Azads executed an unrecorded promissory note,

agreeing to pay MERS a total of $1,235,000.00 ("Azad Note").  *Id.* at 8 ¶ 32.  The

Azads also executed a mortgage in favor of MERS on October 26, 2006 ("Azad

Mortgage"), and recorded the Azad Mortgage in the State of Hawaii Bureau of

Conveyances ("BOC") on November 8, 2006, using the Azad Property as security

for the Azad Note.  *Id.*

MERS assigned the Azad Mortgage to Bank of America, N.A. ("Bank of America") and recorded the assignment on March 17, 2009 at the BOC.  *See* ECF No. 11-10.  On September 20, 2010, PNC (loan servicer for Bank of America) filed a Mortgagee's Affidavit of Foreclosure Under Power of Sale (the "Foreclosure Affidavit") in the BOC in connection with the Azad Property.  *See* ECF No. 11-8.  PNC certified in the Foreclosure Affidavit that in accordance with its power of sale and HRS chapter 667, it had foreclosed on the Azad Property, held a sale, then transferred the Azad Property by quitclaim deed from Bank of America to Bank of America.  ECF No. 11-8.  Bank of America then sold the Azad Property by special warranty deed to Lars Werner, who then sold the Azad Property to the Fedak Defendants by warranty deed.  *See* ECF Nos. 11-8 to 11-13.

 (2)  Plaintiff Franco owned a property in Makawao, Maui ("Franco Property").  ECF No. 1 at 8 ¶ 33.  In 2005, Plaintiff Franco executed an unrecorded promissory note, agreeing to pay AccuBanc Mortgage ("Accubanc"), a division of National City Bank of Indiana, a National Banking Association ("NCB"), a total of $287,000.00 ("Franco Note").  *Id.* at 8 ¶ 34.  Plaintiff Franco also executed a mortgage in favor of Accubanc on February 8, 2005 ("Franco Mortgage"), and recorded the Franco Mortgage in the BOC on February 15, 2005, using the Franco Property as security for the Franco Note.  *Id.*  NCB is PNC's predecessor by

merger. *Id*. at 9 ¶ 35.

On April 23, 2010, Accubanc filed a Foreclosure Affidavit in the BOC in connection with the Franco Property. *See* ECF No. 11-14. PNC certified in the Foreclosure Affidavit that in accordance with its power of sale and HRS chapter 667, it had foreclosed on the Franco Property, and transferred the Franco Property by quitclaim deed from Accubanc to Accubanc. *Id*. at 1-2. Accubanc then transferred the Franco Property by quitclaim deed to the Federal Home Loan Mortgage Corporation ("FHLMC"). ECF No. 11-16. FHLMC then sold the Franco Property by limited warranty deed to Merritt K. Kaufman and Jesseca F. Kaufman on May 2, 2011. ECF No. at 11-17. The Kaufmans granted mortgages on the Franco Property to Bank of Hawaii and MERS, as nominee for Flagstar. ECF No. 1-2 at 31 ¶ 112; ECF No. 11-20. The Kaufmans transferred the Franco Property by quit claim deed to Defendant Jesseca F. Kaufman on August 5, 2014. *See* ECF No. 11-18. Defendant Jesseca F. Kaufman thereafter transferred the Franco Property to Defendant Cari Todd Keenan on September 8, 2014. *See* ECF No. 11-19.

(3) Plaintiff Kovach owned a leasehold interest in property in Lahaina, Maui ("Kovach Property"). ECF No. 1-2 at 9 ¶ 36. In 2004, Plaintiff Kovach executed an unrecorded promissory note, agreeing to pay Accubanc a total of $130,500.00 ("Kovach Note"). *Id*. at 9 ¶ 37. Plaintiff Kovach also executed a

mortgage in favor of Accubanc on March 23, 2004 ("Kovach Mortgage"), and

recorded the Kovach Mortgage in the BOC on April 6, 2004, using the Kovach

Property as security for the Kovach Note.  ECF No. 11-22.

On October 18, 2010, PNC filed a Foreclosure Affidavit in the BOC in

connection with the Kovach Property.  ECF No. 11-21.  PNC stated in the

Foreclosure Affidavit that in accordance with its power of sale and HRS chapter

667, it had foreclosed on the Kovach Property and sold the Kovach Property to

itself.  *Id*. at 3.  PNC then assigned the lease by quitclaim deed from PNC to its

nominee FHLMC.  ECF No. 1-2 at 32 ¶ 121; ECF No. 11-21.  FHLMC then sold

the Kovach Property by Apartment Deed and Assignment of Ground Lease

(Limited Warranty) to Carol Ann Jung on July 19, 2012, who subsequently

transferred that same interest to the Carol Ann Jung 2010 Trust on October 26,

2015.  ECF No. 11-24 to 25.  The Trust then assigned its interest by Assignment of

Apartment Lease to Defendant Kane on September 26, 2018.  ECF No. 11-26.

Defendant Kane granted First Hawaiian Bank a mortgage using the Kovach

Property as security on September 25, 2018.  ECF No. 11-27.

(4)  Plaintiff Tanner-Smith owned a property in Kihei, Maui ("TS

Property").  *Id*. at 9 ¶ 38.  In 2009, Plaintiff Tanner-Smith executed an unrecorded

promissory note, agreeing to pay Commonwealth United Mortgage, a division of

NCB, a total of $376,200.00 ("TS Note").  *Id*. at 9 ¶ 39.  Plaintiff Tanner-Smith

also executed a mortgage in favor of Commonwealth United Mortgage on

September 28, 2005 ("TS Mortgage"), and recorded the TS Mortgage in the BOC

on October 6, 2005, using the TS Property as security for the TS Note.  ECF No.

11-29.

On January 2, 2009, PNC filed a Foreclosure Affidavit in the BOC in

connection with the TS Property.  ECF No. 11-28.  PNC stated in the Foreclosure

Affidavit that in accordance with its power of sale and HRS chapter 667, it had

foreclosed on the TS Property, and sold the TS Property by limited warranty deed

to Wailana PS, LLC on June 10, 2011.  ECF Nos. 11-28, 11-30.  Wailana PS, LLC

subsequently transferred the property by apartment deed to the Trobough

Defendants on May 7, 2012.  ECF No. 11-31.

Plaintiffs filed a complaint in State Court on December 12, 2018, alleging

three claims:  wrongful deprivation of real property; unfair and deceptive trade

practices ("UDAP") and unfair methods of competition ("UMOC") pursuant to

Hawaii Revised Statutes ("HRS") chapter 480; and quiet title and ejectment.

Plaintiffs allege only the quiet title and ejectment claim against the Non-Diverse

Citizens.  The crux of the allegations against the Non-Diverse Citizens is related to

the statements in the Foreclosure Affidavits, namely, PNC's alleged failure to

conduct the foreclosure of the Azad, Franco, Kovach, and TS properties

(collectively, "Properties") in accordance with the Power of Sale Provisions and

7

Hawaii law.  Plaintiffs aver that, because PNC failed to conduct a proper

foreclosure sale of the Properties when PNC transferred the Properties to itself or

its nominees, PNC's foreclosures were wrongful and thus, Plaintiffs have superior

title to the Properties, despite PNC's (or its nominees') transfer of the Properties to

third-parties.

## DISCUSSION

I.  Determining Federal Jurisdiction Where Defendant Alleges Fraudulent Joinder

"Federal courts are courts of limited jurisdiction.  They possess only that

power authorized by Constitution and statute . . . .  It is to be presumed that a cause

lies outside this limited jurisdiction . . . ."  *Kokkonen v. Guardian Life Ins. Co. of

Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  Courts in this circuit must

"strictly construe the removal statute against removal jurisdiction."  *Gaus v. Miles,

Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "Federal jurisdiction must be rejected if

there is any doubt as to the right of removal in the first instance."  *Id.*; *see* 28

U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district

court lacks subject matter jurisdiction, the case shall be remanded.").

The burden of establishing this district court's jurisdiction rests on PNC, the

party asserting federal jurisdiction.  *Kokkonen*, 511 U.S. at 377.  In addition,

because PNC is alleging fraudulent joinder, it faces not only the strong

presumption against removal jurisdiction, but also, the "general presumption

against fraudulent joinder." *See Hunter v. Philip Morris USA*, 582 F.3d 1039,

1046 (9th Cir. 2009) ("*Hunter*") (quoting *Hamilton Materials, Inc. v. Dow Chem.

Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007)).  PNC can meet its burden of

establishing this Court's jurisdiction if PNC can prove that Plaintiffs' joinder of the

Non-Diverse Citizens was "fraudulent."

The joinder of a defendant is fraudulent if the party asserting federal

jurisdiction can prove, by clear and convincing evidence, that (1) the plaintiff fails

to state a cause of action against the non-diverse defendant(s), and (2) the failure is

obvious according to the settled rules of the state.  *McCabe v. Gen. Foods Corp.*,

811 F.2d 1336, 1339 (9th Cir. 1987).  Notably, the fraudulent joinder standard

requires even less of a plaintiff than what Federal Rule of Civil Procedure 12(b)(6)

requires.  *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 549 (9th

Cir. 2018) ("A claim against a defendant may fail under 12(b)(6), but that

defendant has not necessarily been fraudulently joined.").  The Ninth Circuit has

held that the fraudulent joinder is "similar to 'wholly insubstantial and frivolous'

standard for dismissing claims under Rule 12(b)(1) for lack of federal question

jurisdiction."  *Id.*  In addition, the Ninth Circuit has emphasized "that a federal

court must find that a defendant was properly joined and remand the case to state

court if there is a '*possibility* that a state court would find that the complaint states

a cause of action against any of the [non-diverse] defendants.'"  *Id.* (emphasis and

9

brackets in *Grancare*) (quoting *Hunter*, 582 F.3d at 1046).

In the face of this heavy burden, PNC argues that the Court need only determine whether settled Hawaii law provides the remedy of ejectment of an innocent third-party purchaser ("innocent purchaser" or "BFP") in a quiet title action to determine whether Plaintiffs indeed state a cause of action against the Non-Diverse Citizens. ECF No. 26 at 13. PNC's position is that (1) the Non-Diverse Citizens are innocent purchasers, and (2) settled Hawaii law precludes ejectment claims against innocent purchasers as a wrongful foreclosure remedy. The Court disagrees with PNC's précis of this Court's task because it is at odds with the allegations in the Complaint. Plaintiffs squarely allege that the Non-Diverse Citizens are not innocent purchasers. ECF No. 1-2 at ¶¶ 88-92, 103-108, 122-27, 141-46. Thus, the Court must determine whether settled Hawaii law precludes Plaintiffs' claims against the Non-Diverse Citizens, as currently pled, not as PNC believes it will ultimately prove.

In deciding whether a cause of action is stated, courts in the Ninth Circuit must "look only to a plaintiff's pleadings to determine removability[,]" without recourse to the defendant's pleadings." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citations omitted). Where fraudulent joinder is an issue, however, courts may "go somewhat further." *Id.*; *see also McCabe*, 811 F.2d at 1339 ("The defendant seeking removal to the federal court is entitled to

present the facts showing the joinder to be fraudulent."). "[F]raudulent joinder

claims may be resolved by 'piercing the pleadings' and considering summary

judgment-type evidence such as affidavits and deposition testimony." *Morris v.*

*Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting *Cavallini v.*

*State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (citations

omitted) (brackets and single quotations marks in *Morris*)).

Here, PNC has not submitted any "summary judgment-type evidence."

Accordingly, the Court looks only to Plaintiffs' pleading to determine

removability, *i.e.*, whether Plaintiffs state a claim against Non-Diverse Citizens.

## II.    Sufficiency of Plaintiffs' Complaint

Plaintiffs allege quiet title and ejectment claims against the Non-Diverse

Citizens who currently claim title to the Properties: (1) California citizens, the

Fedaks, for the Azad Property; (2) Hawaii citizens, Ms. Kaufman and Mr. Keenan

for the Franco Property; (3) California citizen Mr. Kane for the Kovach Property;

and (4) Hawaii citizens, the Troboughs, for the Tanner-Smith Property. *See* ECF

No. 1-2 at 22-23. Plaintiffs asserting a quiet title action in Hawaii must ultimately

prove title in and to the land in dispute by proving his/her title is superior to that of

the defendants. *See Maui Land & Pineapple Co. v. Infiesto*, 76 Haw. 402, 408,

879 P.2d 507, 513 (1994) (affirming summary judgment in favor of plaintiff in a

quiet title action because plaintiff had demonstrated a substantial interest in a

11

property through certain documents).

The basis for PNC's fraudulent joinder argument is not, however, that Plaintiffs cannot state a claim that their title is superior to that of the Non-Diverse Citizens. Rather, PNC's argument is that, even if Plaintiffs have superior title, Hawaii law provides that innocent purchasers (which PNC claims Non-Diverse Citizens are, notwithstanding the allegations of the Complaint) are protected from ejectment in a non-judicial real property transaction. Thus, PNC asserts that Plaintiffs' ejectment claims against the Non-Diverse Citizens fail, leaving Plaintiffs only their potential remedies against PNC under settled Hawaii law. The Court disagrees, finding that settled Hawaii law does not: (i) preclude Plaintiffs' claims that the Non-Diverse Citizens are not innocent purchasers; or alternatively, (ii) preclude ejectment of an innocent purchaser.

A. Plaintiffs' Innocent Purchaser Allegations

A BFP or "innocent purchaser" is "'one who, by an honest contract or agreement, purchases property or acquires an interest therein, without knowledge, or means of knowledge sufficient to charge him in law with knowledge, of any infirmity in the title of the seller.'" *Kau Agribusiness Co. v. Heirs or Assigns of Ahulau*, 105 Haw. 182, 193, 95 P.3d 613, 624 (2004) (quoting *Pelosi v. Wailea Ranch Estates*, 91 Haw. 478, 489, 985 P.2d 1045, 1056 (1999) (internal quotation marks omitted) (citation omitted)). Plaintiffs claim that the Non-Diverse Citizens

are not and cannot be BFPs because the defects in their grantor's title were

apparent from the chain of title on record at the BOC; thus, the Non-Diverse

Citizens had "knowledge" of the infirmity in their transferor's title. *See, e.g.*, ECF

No. 1-2 at 24-25 ¶ 88 ("Plaintiffs Azad affirmatively allege that [the Fedak]

Defendants . . . are not and cannot be bona fide purchasers because the defects in

their respective grantors' title are apparent from the chain of title on record at the

[BOC].").

PNC counters that, notwithstanding Plaintiffs' allegations, the Non-Diverse

Citizens are innocent purchasers without knowledge because purchasers have "no

duty" under Hawaii law to "scrutinize recorded documents and imagine potential

claims." ECF No. 26 at 36. Citing to *U.S. Bank Nat'l Ass'n v. Castro*, PNC argues

that purchasers are entitled to rely on the Foreclosure Affidavits as conclusively

establishing a valid sale. ECF No. 26 at 36 (citing *Castro*, 131 Haw. 28, 40, 313

P.3d 717, 729 (2013) ("That the affidavit shall be admitted as evidence that the

power of sale was duly executed demonstrates the legislature's intent to promote

the finality of properly conducted sales.").

The Hawaii Supreme Court in *Castro* did indeed hold that a mortgagee's

affidavit of foreclosure is admissible as evidence that the power of sale was

executed pursuant to HRS § 667-8 (repealed). Section 667-8, however, provided

that only if it appeared by the affidavit that the affiant had complied with the

requirements of the power of sale and statute, **and sold the property in the**

**manner required by the power**, could the affidavit be admitted as evidence that

the power of sale was duly executed:

> If it appears by the affidavit that the affiant has in all respects
> complied with the requirements of the power of sale and the statute, in
> relation to all things to be done by the affiant before selling the
> property, and has sold the same in the manner required by the power,
> the affidavit, or a duly certified copy of the record thereof, shall be
> admitted as evidence that the power of sale was duly executed.

*Castro*, 131 Haw. at 28, 40 n.16, 313 P.3d at 729 n.16 (quoting HRS § 667-8

(1993) (emphasis omitted)).  Here, Plaintiffs directly allege that PNC failed to sell

the property in the manner required by PNC's Power of Sale Provisions.  In

addition, the homeowners in *Castro* never argued that the mortgagee had violated

the statute governing the process for nonjudicial foreclosure.  Nor was *Castro* a

case regarding notice.  The Court thus cannot conclude that *Castro* is applicable

authority on whether Hawaii law precludes the BFP inquiry notice theory Plaintiffs

endorse in their Complaint.

      PNC also argues that under Hawaii law, a "non-bona fide purchaser" is "one

who does not pay adequate consideration, takes *with* knowledge that his transferor

acquired title by fraud, or . . . buys registered land with *full notice* of the fact that it

is *in litigation* between the transferor and a third party."  ECF No. 26 at 33

(emphasis in PNC Opposition) (quoting *Kondaur Capital Corp. v. Matsuyoshi*, 136

Haw. 227, 240 n.27, 361 P.3d 454, 467 n.27 (2015).  PNC argues that Plaintiffs

allege none of the foregoing.  *Id.*

As explained above, however, an innocent purchaser under Hawaii law is one who purchases or acquires interest in the property without knowledge, or means of knowledge sufficient to charge him in law with knowledge, of any infirmity in the title of the seller.  *Pelosi*, 91 Haw. at 489, 985 P.2d at 1056 (quotation marks and citation omitted).  PNC's burden is to prove by clear and convincing evidence that Plaintiffs' notice arguments obviously fail to state a cause of action under settled Hawaii law.  PNC fails, however, to offer any settled Hawaii law holding that the only "infirmities" an innocent purchaser is charged with knowing are, as PNC argues, fraud or litigation.

B.    Plaintiffs' Notice Allegations

PNC also argues that this district court has already rejected Plaintiffs' constructive notice theory.  ECF No. 25 at 32 (citing *Lynch v. Bank of N.Y. Mellon*, Civ. No. 17-00195 LEK-RLP,  2017 WL 3568667, at *5 (D. Haw. Aug. 15, 2017)).  PNC further contends that Plaintiffs cannot point to any authority capable of supporting their claims against the Non-Diverse Citizens.  *See id*. at 35.  PNC thus concludes that in the absence of such supporting authority, the Non-Diverse Citizens are BFPs, despite Plaintiffs' allegations.  *Id*. at 36.  The Court is not persuaded.

First, the district court dismissed the plaintiffs' quiet title claim in *Lynch* on

15

the ground that, under the *Twombly/Iqbal* plausibility standard, the plaintiffs had

failed to plead plausible factual allegations supporting the plaintiffs' position that

the individuals who purchased their real property in foreclosure were not BFPs.

*See* CV19-00056 LEK-RT; *Carpenter, et al. v. PNC, et al.*; Order Granting in Part

and Denying in Part Plaintiffs' Motion for Order of Remand (May 22, 2019), ECF

No. 37 (citing *Seegers v. CIT Bank N.A.*, CIVIL 17-00399 LEK-KSC, 2018 WL

1558550, at *7 (D. Haw Feb. 28, 2018); *Lynch*, 2017 WL 3568667, at *1, 5.

Because the issue in this case is whether the Non-Diverse Citizens have been

fraudulently joined, however, the question before the Court is whether a state court

would find that Plaintiffs state a cause of action under Hawaii's notice pleading

standards.  *See Hunter*, 582 F.3d at 1046 ("Construing [plaintiff's] pleadings

liberally, as required by Alaska's notice pleading rules, the complaint sufficiently

alleges a strict products liability claim under Alaska law.").

   Unlike the "plausibility" pleading standard required by *Twombly* and *Iqbal*,

the Hawaii Supreme Court has unequivocally adopted the "notice" pleading

standard.  *Bank of Am., N.A. v. Reyes-Toledo*, 143 Haw. 249, 263, 428 P.3d 761,

775 (2018) (reaffirming the traditional notice pleading standard as Hawaii's

pleading standard and rejecting the Intermediate Court of Appeals' application of

the "plausibility" pleading standard).  Under this standard, Plaintiffs are not

required to plead legal theories with "precision."  *Id.* at 258, 428 P.3d at 770

(quoting *Leslie v. Estate of Tavares*, 93 Haw. 1, 4, 994 P.2d 1047, 1050 (2000)).

Plaintiffs are required only to give opposing parties "fair notice" of what their

claim is and the "grounds" upon which the claim rests. *Id*. (quoting *Perry v.

Planning Comm'n*, 62 Haw. 666, 685, 619 P.2d 95, 108 (1980)). Accordingly, the

Court must review the sufficiency of Plaintiffs' claims under these foregoing

notice pleading standards, not under federal *Twombly*/*Iqbal* pleading standards.

Plaintiffs allege in their Complaint that the Foreclosure Affidavits failed to

establish that PNC had fulfilled the conditions necessary to exercise the Power of

Sale Provisions. ECF No. 1-2 at 24 ¶ 84. Plaintiffs allege that the Foreclosure

Affidavits falsely stated that the foreclosures had been conducted in accordance

with the Power of Sale Provisions and HRS section 667. *Id*. ¶ 85. Plaintiffs aver

that these violations "were apparent or could be reasonably inferred or discerned

from the Foreclosure Affidavit[s] and any subsequent purchaser thus had

constructive notice that a self-dealing mortgagee had sold the Propert[ies] to itself

or its nominee by quitclaim deed without having fulfilled conditions for a lawful

sale." *Id*. ¶ 86. Plaintiffs maintain that the Non-Diverse Citizens knew or should

have known that title was valid only if the foreclosure was valid. *Id*. at 25 ¶ 90;

*see also id*. ¶ 91 (alleging that, pursuant to *Decano v. Hutchinson Sugar Co*., the

recording of the Affidavit of Sale constituted constructive notice to the Non-

Diverse Citizens of violations of the Power of Sale Provisions and Hawaii non-

judicial foreclosure law) (citing *Decano*, 45 Haw. 505, 518, 371 P.2d 217, 224

(1962) ("The recordation of the certificate of entry is constructive notice to all

persons who claim any title or interest acquired subsequent to the mortgage under

which the entry for foreclosure is made, and enables them to determine, with

facility and precision, what is necessary to be done for the preservation and

protection of the interest which they may have acquired in the estate.").

Stated differently, Plaintiffs allege that there is a possibility that Hawaii law

requires purchasers of property from a self-dealing mortgagee at a nonjudicial

foreclosure auction to inquire about the circumstances of the foreclosure and

ensure that the process was legally sufficient.  Only then can such parties avail

themselves to the protections conferred to "innocent purchasers" who may not

have superior title to a property through no fault of their own.

Construing Plaintiffs' pleadings liberally, as required by Hawaii's notice

pleading rules, the Court finds that the Complaint sufficiently alleges a quiet

title/ejectment claims against the Non-Diverse Citizens under Hawaii law.

Plaintiffs' allegations provide the Non-Diverse Citizens with fair notice of what

Plaintiffs' claims are and the grounds upon which their claims rest.  *See Laeroc

Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd.*, 115 Haw. 201, 216 n.17, 166 P.3d

961, 976 n.17 (2007) ("Hawaii's rules of notice pleading require [only] that a

complaint set forth a short and plain statement of the claim that provides defendant

with fair notice of what the plaintiff's claim is and the grounds upon which the

claim rests . . . and that [p]leadings . . . be construed liberally . . . ." (brackets in

original) (citations omitted)).

Second, it is not Plaintiffs' burden to prove that their theory will ultimately

prevail. The standard binding this Court does not consider whether Plaintiffs will

"actually prevail" or even "probably prevail," but whether there is a possibility

Plaintiffs' claims are meritorious. *Aguilar v. McKesson Corp*., No. 1:16-CV-

00308-LJO-SKO, 2016 WL 2616529, at *4 (E.D. Cal. May 9, 2016) (quoting

*Cont'l Ins. Co. v. Foss Maritime Co*., Case No. C 02-3936 MJJ, 2002 WL

31414315, at *6 (N.D. Cal. Oct. 23, 2002)); *see also Handy v. Wells Fargo Bank,

N.A*., No. CV07-2293-PHX-GMS, 2008 WL 4890758, at *1 (D. Ariz. Nov. 12,

2008) ("In order to establish that there has been no fraudulent joinder, 'a plaintiff

need only have one potentially valid claim against a non-diverse defendant.'"

(quoting *Knutson v. Allis-Chalmers Corp*., 358 F. Supp. 2d 983, 993 (D. Nev.

2005) (citing *Gray v. Beverly Enterprises–Mississippi*, 390 F.3d 400, 411-12 (5th

Cir. 2004) (citing *Green v. Amerada Hess Corp*., 707 F.2d 201, 208 (5th Cir.1983);

*Cabaleta v. Standard Fruit Co*., 883 F.2d 1553, 1561 (11th Cir. 1989)). If there is

any possibility that a Hawaii state court could find that Plaintiffs sufficiently allege

a cause of action against the Non-Diverse Citizens based on Plaintiffs' notice

theories, the district court must remand. *Grancare*, 889 F.3d at 549.

Plaintiffs' failure to cite to a single Hawaii authority showing their notice theory ultimately prevails is not germane to this Court's inquiry; however, PNC's failure to do so is. On this Motion, PNC bears the burden of proving, by clear and convincing evidence, that Plaintiffs obviously fail to state a cause of action against the Non-Diverse Citizens according to settled Hawaii law, *i.e*., that settled Hawaii law precludes Plaintiffs from ejecting the Non-Diverse Citizens because, even if Plaintiffs have superior title, the Non-Diverse Citizens are innocent purchasers. *Allen v. Boeing Co*., 784 F.3d 625, 635 (9th Cir. 2015) (concluding that the defendants had not met their "heavy burden of showing that there is no possibility that Washington law might impose liability" on the defendants because Boeing had not presented "discrete and indisputable facts that would preclude [the plaintiffs] from recovering against [the defendants]"). PNC fails to meet this burden and overcome the presumption against fraudulent joinder.

Accordingly, the Court finds that PNC fails to meet its heavy burden of establishing federal jurisdiction because PNC fails to demonstrate that the joinder of the Non-Diverse Citizens is "fraudulent." The Court finds that it is possible that a Hawaii state court would find that Plaintiffs state a cause of action against the Non-Diverse Citizens for quiet title and ejectment. This Court thus FINDS that the district court must consider the citizenship of the Non-Diverse Citizens, and thus lacks subject-matter jurisdiction. The Court RECOMMENDS that the district

20

court remand to State Court.

### III.  Settled Hawaii Law Does Not Preclude Ejectment of a BFP

Even if a Hawaii state court would disagree with this Court's reading of the

State of Hawaii's law on innocent purchasers and notice requirements and decide

that Plaintiffs have not adequately pled non-BFP status, the Court concludes that

the law is nonetheless unsettled as to whether title from a wrongful nonjudicial

foreclosure is void or voidable as to the innocent purchaser under the

circumstances of this case.

PNC relies on three Hawaii cases in support of its position that Hawaii law

does not authorize Plaintiffs to eject an innocent third-party purchaser:  *Santiago v.

Tanaka*, 137 Haw. 137, 142, 366 P.3d 612, 617 (2016); *Mount v. Apao*, 139 Haw.

167, 169, 384 P.3d 1268, 1270 (2016); and *Hungate v. Law Office of David B.

Rosen*, 139 Haw. 394, 400, 391 P.3d 1, 7 (2017).  PNC argues that (1) *Santiago*

makes plain that return of title and possession is not an available remedy against

BFPs, (2) *Mount* reaffirmed *Santiago* and provided that a foreclosure sale was void

only where there was no subsequent sale or a non-BFP possessed the property, and

(3) *Hungate* reiterated that, when voiding an unlawful foreclosure is not possible,

restitution of out-of-pocket losses is the appropriate remedy.  *See Santiago*, 137

Haw. at 158, 366 P.3d at 633; *Mount*, 139 Haw. at 179-80, 384 P.3d at 1280-81;

*Hungate*, 139 Haw. at 407, 391 P.3d at 14.

Plaintiffs counter that, as victims of wrongful foreclosures, Plaintiffs are entitled to claim title, *i.e*., eject the Fedaks, Ms. Kaufman, Mr. Keenan, Mr. Kane, and the Troboughs, and have title returned to the respective Plaintiffs. ECF No. 33 at 10 (citing *Santiago*, 137 Haw. at 158, 366 P.3d at 633). Plaintiffs contend that, although *Santiago* acknowledges that transfers to third persons make recovery of title and possession "impracticable," *Santiago* does not squarely state that recovery is "impossible." ECF No. 33 at 10-11. Plaintiffs also argue that the "voidness" of the deeds and conveyances in this case rests in part on grounds that are separate and distinct from those at issue in the cases PNC relies upon in criticizing Plaintiffs' theory that even innocent purchasers may be ejected.

In addition, Plaintiffs aver that any transfer of property subsequent to a wrongfully conducted foreclosure is *void ab initio*, rather than voidable. *See, e.g*., ECF No. 1-2 at 32; *see also Kondaur Capital Corp.*, 136 Haw. at 241, 361 P.3d at 468 (holding that "the strength and validity of [the mortgagee's vendee's] title is unavoidably intertwined with the validity of the foreclosure sale"). Plaintiffs contend that because the title was tainted by the alleged wrongful foreclosure, title did not actually pass from Plaintiffs to their respective mortgagees, and thus the Non-Diverse Citizens do not actually have a valid deed. *See, e.g*., ECF No. 1-2 at 24 ¶ 87.

The Court acknowledges PNC's cogent arguments against the possibility

that Hawaii law would eject an innocent purchaser.  Nonetheless, the Court cannot

conclude that Hawaii's case law categorically rejects the possibility.  This Court's

task in a fraudulent joinder inquiry is limited, and it must walk a "fine line" in

considering the merits of a matter "without assuming jurisdiction over it."  *Davis v.*

*Prentiss Props. Ltd.*, 66 F. Supp. 2d 1112, 1114 (C.D. Cal. 1999).  This Court need

not and will not make any legal conclusions about the merits of Plaintiffs'

allegations regarding the validity of the deeds in this action without a Hawaii case

on point that categorically rejects Plaintiffs' theory.

Moreover, Plaintiffs have alleged UMOC and UDAP claims against PNC,

alleging that PNC acted not only unfairly in advertising Plaintiffs' Properties for

sale, but also, that "such terms of sale were false, deceptive, and misleading," *i.e.*,

fraudulent.  ECF No. 1-2 at 18-19.  The Court finds that under these circumstances,

Hawaii law is not settled on whether even BFPs may be ejected if a plaintiff were

able to prove both wrongful foreclosure and a violation of UMOC in connection

with that foreclosure.  *See also* Haw. Rev. Stat. § 480-12 ("Any contract or

agreement in violation of [ ] chapter 480 is void and is not enforceable at law or in

equity.").

Without any discrete and indisputable facts sufficient enough for this Court

to conclude that Plaintiffs cannot possibly sustain a theory that innocent purchasers

may be ejected from property because a wrongful foreclosure renders any

23

subsequent transfers void, not voidable, this Court finds that remand is proper in

this action even if the Non-Diverse Citizens were indeed innocent purchasers.  *See*

*Allen*, 784 F.3d at 635 ("We, like the district court, do not pass on the merits of

[the plaintiff's] claim.  We hold only that [the defendant] has not presented discrete

and indisputable facts that would preclude [the plaintiffs] from recovering against

[the defendant]").

IV.  *Hunter* as an Alternative Basis for Remand

As an alternative basis for remand, Plaintiffs contend that *Hunter* "makes

clear that (1) merits arguments that apply equally to diverse and non-diverse

defendants cannot support 'fraudulent joinder' and (2) affirmative defenses other

than [statute of] limitations cannot render a joinder 'fraudulent.'"  ECF No. 11-1 at

25 (citing *Hunter*, 582 F.3d at 1044-45) (quoting *Smallwood v. Ill. Cent. R.R. Co.*,

385 F.3d 568, 574 (5th Cir. 2004) (en banc)).  PNC counters that *Hunter* has no

application in this case because *Hunter* stands for the proposition that defendants

may not assert fraudulent joinder only if all the claims in a lawsuit against all

defendants fail under settled state law.  ECF No. 26 at 14.  PNC argues that,

because the removal arguments at issue would not dispose of all claims against all

defendants, *Hunter* has no application in this case.  In addition, PNC argues that

PNC's removal arguments do not attack the merits of Plaintiffs' wrongful

foreclosure claim; rather, PNC's arguments are procedural defenses analogous to

24

the statute of limitations defense specifically authorized in *Hunter*.

First, the Court is not convinced that *Hunter* is applicable in this case. The removal arguments at issue would not dispose of all claims against all defendants as they did in *Hunter* and *Smallwood*; however, retaining jurisdiction on the basis of fraudulent joinder would dispose of both the Non-Diverse Citizens and diverse defendants, MERS and Flagstar, and effectively decide Plaintiffs' quiet title/ejectment claims. The Ninth Circuit law simply is not clear what *Hunter* requires under these circumstances.

This Court nevertheless disagrees with PNC that its arguments do not attack the merits of Plaintiffs' quiet title/ejectment claim; PNC is clearly attacking the merits of these claims. PNC's arguments go to the very heart of Plaintiffs' quiet title/ejectment claims and require a searching inquiry into the merits of Plaintiffs' quiet title/ejectment claims.

The Ninth Circuit has signaled in *Hunter* that it is improper for a district court to inquire into an argument's merits so deeply as to "effectively decide[ ] the entire case." *Hunter*, 582 F.3d at 1045; *see also Grancare*, 889 F.3d at 548-49 ("We have declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." (citing *Hunter*, 582 F.3d at 1046)). If this Court were to decide that the Non-Diverse Citizens were BFPs

under Hawaii law and that Hawaii law categorically precludes ejectment as a

remedy as to BFPs, it would effectively decide Plaintiffs' quiet title/ejectment

claims.  Such a task is not for this Court on a motion to remand.  In this Court's

view, the merits of PNC's arguments regarding Hawaii law are for the Hawaii state

courts to decide.

Without making any conclusions about whether, under *Hunter*, PNC's

arguments definitively require the district court to remand, this Court finds that

*Hunter* nonetheless provides persuasive guidance that remand is proper in this

case.

## V.  Statute of Limitations

PNC argues that the statute of limitations ("SOL") bars the claims against

the Non-Diverse Citizens Tanner-Smith and First Hawaiian Bank because they

acquired their interest in the properties more than six years ago.  *See* ECF No. 26 at

16, 37.  PNC contends that, contrary to Plaintiffs' argument in their Motion that the

20-year SOL applies to Plaintiffs' claim against Ms. Tanner-Smith and First

Hawaiian Bank, Hawaii imposes a six-year SOL "as to (i) actions on contracts

other than those under Chapter 577A (not at issue here) (HRS §657-1(1), and (ii)

all '[p]ersonal actions of any nature whatsoever' not specifically covered by

another statute (HRS § 657-1(4))."  *Id*. (quoting HRS § 657-1(4)).  PNC argues

that the issue is settled under Hawaii law, "compelled" by the Hawaii Supreme

26

Court's ruling in *Au v. Au*, 63 Haw. 210, 626 P.2d at 177 (1981) ("*Au*"). The Court disagrees. *Au* is not directly on point for the proposition that quiet title/ejectment actions are subject to a six-year SOL period.

First, the Hawaii Supreme Court held in *Au* that the proper standard to determine the relevant limitations period is the nature of the claim or right, which is determined from the allegations contained in the pleadings, not the form of the pleading. *Au*, 63. Haw. at 214, 626 P.2d at 177 (citing *Malone v. Univ. of Kan. Med. Ctr.*, 552 P.2d 885 (1976)); *see also Crawford v. Crawford*, 69 Haw. 410, 415, 745 P.2d 285, 288 (1987) (noting that the Hawaii Supreme Court had reaffirmed the *Au* "nature of the claim" standard in *Hun v. Ctr. Props.*, 63 Haw. 273, 276, 626 P.2d 182, 185 (1981)). Second, the Hawaii Supreme Court concluded that the six-year SOL period prescribed in section 657(1)(4) applied to "fraudulent representation" claims. *Id*. at 217; 626 P.2d at 179 ("We hold that the relevant limitations period for fraudulent representation is governed by HRS § 657-1(4)."). Plaintiffs do not allege a fraudulent representation claim against the Non-Diverse Citizens. Accordingly, *Au* does not compel this Court to conclude that a six-year SOL applies to Plaintiffs' claim against Ms. Tanner-Smith. Rather, *Au* holds that Plaintiffs' allegations control the determination of the applicable SOL in this case.

PNC argues that the nature of Plaintiffs' quiet title/ejectment claims is the

allegedly defective foreclosure sale. PNC contends that because there is no specific statute governing wrongful foreclosure claims, the general SOL period of HRS section 657-1(4) applies in this case. ECF No. 26 at 38. The Court is not persuaded.

HRS chapter 657 contains two parts. The first part governs "personal actions" while the second part governs "real actions. Section 657-1(4) provides that a six-year SOL applies to "personal actions of any nature whatsoever not specifically covered by the laws of the State." The Court is not convinced that a quiet title/ejectment action is a "personal action" within the meaning of section 657-1(4).

The Hawaii Supreme Court specifically relied on Corpus Juris Secundum ("CJS"), Actions, for the definition of "personal action." *Au*, 63. Haw. at 217, 626 P.2d at 179. Pursuant to CJS, "[a] personal action is an action brought for the recovery of personal property, for the enforcement of a contract or to recover damages for its breach, or for the recovery of damages for the commission of an injury to the person or property." 1A C.J.S. Actions § 9 (citing *Au*, 63 Haw. at 263, 626 P.2d at 173). CJS also provides that "[a] personal action is, as to the cause of action, either in tort or in contract; as to the place where it is to be tried, either local or transitory; and as to its object, either in personam or in rem." *Id*. The Court is unable to discern how a quiet title/ejectment action falls within the

foregoing definition of "personal action."

The nature of Plaintiffs' quiet title/ejectment claims, as contained in Plaintiffs' pleading, is for the recovery of land. *See, e.g.*, ECF No. 1-2 at 26 ("The Azad Plaintiffs are further entitled to an order or judgment awarding them title to and possession of the Property and quieting any claim of title by [the Fedak] Defendants . . . ."). Part II of HRS chapter 657 specifically governs actions to recover possessions of any land. *See* 1A C.J.S. Actions § 9 ("A real action is one to recover real property, while a personal action is to recover personal property, enforce a contract, or recover damages."). Under section 657-31 of Part II, a 20-year SOL period applies to actions to recover possession of any lands.

Notwithstanding this Court's skepticism with PNC's argument that section 657-1(4) governing personal actions applies in this case rather than the SOL governing real actions, this Court need not make any conclusions about the merits of PNC's arguments. The Court need only inquire as to whether settled Hawaii law on the SOL period for quiet title/ejectment claims precludes Plaintiffs' claim against Ms. Tanner-Smith.

The Hawaii Supreme Court has provided two principles of construction regarding the application of SOL periods to an action: "First, 'courts will apply the longer limitations period when there is doubt as to which statute applies.' *Au*, 63 Haw. at 264, 626 P.2d at 182. Second, '[w]henever possible, the court should

apply the state limitations period governing actions founded on a liability created

by statute.'"  *Crawford*, 69 Haw. at, 415, 745 P.2d at 288 (quoting *Bill's Crane*

*Serv., Inc. v. Quisenberry*, 545 F. Supp. 359, 361 (D. Haw. 1982)).  Based on these

principles, and this Court's doubt that Plaintiffs' quiet title/ejectment is a "personal

action," the Court concludes that settled Hawaii law does not preclude Plaintiffs'

claim against Ms. Tanner-Smith and First Hawaiian Bank.  This Court finds that it

is possible that a state court would find a 20-year SOL period applies to Plaintiffs'

claims against Ms. Tanner-Smith rather than the shorter six-year limitations period

applied in personal actions.  Accordingly, this Court cannot conclude that settled

Hawaii law bars Plaintiffs' claim against Ms. Tanner-Smith.

## VI.  Attorneys' Fees

"When a federal court remands a case, it 'may require payment of just costs

and any actual expenses, including attorney fees, incurred as a result of the

removal.'"  *Kalamau v. Kaloi*, Civ. No. 13-00200 JMS-KSC, 2013 WL 3288064,

at *1 (D. Haw. June 12, 2013), *adopted by* 2013 WL 3288405 (D. Haw. June 27,

2013) (quoting 28 U.S.C. § 1447(c)).  "If, however, there is an objectively

reasonable basis [for removal], fees should be denied."  *Id*.  "Bad faith on the part

of the removing party is not required[.]"  *Id*.

Plaintiffs request attorneys' fees and costs under 28 U.S.C. § 1447(c),

arguing that PNC "lacks any semblance of an 'objectively reasonable basis' for

removing this case." ECF No. 11-1 at 44. Plaintiffs point to PNC's failure to cite state appellate case law in support of PNC's arguments regarding "settled" Hawaii law on BFPs and the applicable SOL period. Plaintiffs also argue that PNC's removal was unreasonable because PNC was "aware" that *Hunter* applies in this case to defeat PNC's fraudulent joinder contention. The Court disagrees.

"[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc*., 518 F.3d 1062, 1065 (9th Cir. 2008) (affirming district court's denial of attorney's fees and costs on remand, notwithstanding the Ninth Court's view that there was "no question that [the defendant's] arguments were losers"). This Court finds that PNC had an objective basis for removing this action based on its fraudulent joinder theory. This action presented close questions regarding Plaintiffs' ability to state a claim against the Non-Diverse Citizens. Courts could reasonably differ on the result. Moreover, the Court is not convinced that the Ninth Circuit has adopted Plaintiffs' position on *Hunter*.

Accordingly, this Court RECOMMENDS that the district court DENY Plaintiffs' Motion to the extent it requests attorneys' fees and costs under § 1447(c). *See, e.g., Gardner v. UICI*, 508 F.3d 559, 562 (9th Cir. 2007) (reversing a district court's decision to award fees in a case involving fraudulent

joinder because "a reasonable litigant in [the defendant's] position could have concluded that federal court was the proper forum in which to litigate [the plaintiff's] claims because the [First Amended Complaint] failed to state a claim against [the non-diverse defendant], the only resident defendant); *c.f. Smith v. Lenches*, 263 F.3d 972, 978 (9th Cir. 2001) ("Both sides had good reason to proceed as they chose to proceed.  If there is any forum shopping to be considered here, it cannot be said that one side is at fault more than the other, for neither can be faulted for seeking to litigate issues in the forum of its choice.").

CONCLUSION

For the reasons discussed in this order, the Court FINDS and RECOMMENDS that the district court GRANT IN PART and DENY IN PART Plaintiffs' Motion for Order of Remand.  The Court FINDS that remand is proper and RECOMMENDS that the district court remand to State Court.  The Court FINDS, however, that PNC had an objectively reasonable bases for removal; thus, the Court RECOMMENDS that the district court DENY Plaintiffs' request for attorneys' fees and costs.

IT IS SO FOUND AND RECOMMENDED.

DATED:  June 6, 2019, at Honolulu, Hawaii.



Kenneth J. Mansfield
United States Magistrate Judge